Filed 4/7/26  P. v. Pereztale CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ROLANDO PEREZTALE,<br><br>     Defendant and Appellant. | C101731<br><br>(Super. Ct. No. CRF2300171)<br><br>ORDER DENYING PETITION FOR REHEARING AND MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the nonpublished opinion filed herein on March 17, 2026, be modified as follows:

In the last paragraph of page 8, modify the sentence that reads: "E.O. testified that defendant touched her vagina multiple times, tried to pull her underwear off while on top

1

of her, made her touch his penis, tried to insert his penis into her vagina twice, and exposed his penis to her" so that it reads in its entirety:

> E.O. testified that defendant touched her vagina multiple times, tried to pull her underwear off while standing between her legs, made her touch his penis, tried to insert his penis into her vagina before and after she told him to stop, and exposed his penis to her.

There is no change in the judgment. The petition for rehearing is denied.

BY THE COURT:


/S/
_____
DUARTE, Acting P. J.


/S/
_____
RENNER, J.


/S/
_____
MESIWALA, J.

2

Filed 3/17/26  P. v. Pereztale CA3 (unmodified opinion)

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C101731 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF2300171) |
| v. | |
| ROLANDO PEREZTALE, | |
| Defendant and Appellant. | |

After a jury convicted defendant Rolando PerezTale of continuous sexual abuse on a child, he appealed, contending the trial court erred in instructing the jury.  We affirm.

## I.  BACKGROUND

In October 2023, the Yuba County District Attorney's Office filed an amended information charging defendant with one count of continuous sexual abuse of a child

1

(Pen. Code, § 288.5, subd. (a)).[1]  The information also alleged, pursuant to section 1203.066, subdivision (a)(8), that the victim, E.O., was under the age of 14 and defendant had substantial sexual conduct with her.

A jury tried the case in November 2023, but it deadlocked, resulting in a mistrial. A second jury tried the case in May 2024.  The People presented evidence that in 2023, E.O. told her mother that defendant had "been touching her" beginning when she was eight and ending when she was 12.

The first incident occurred when E.O. was about seven or eight years old and living near Yuba College.  Defendant, E.O., and her brother were watching TV on couches.  Defendant was laying propped up on one arm, and E.O. was laying on her back next to him, with both of them under a blanket.  Defendant had his arm around her and his hand resting on her hip.  E.O. stated defendant's hand was not moving at the time. However, her mother came into the room and saw defendant's hand under the blanket moving in a circular or rubbing motion between E.O.'s legs.  E.O.'s mother questioned her about the incident in another room, and E.O. told her defendant was " 'rubbing [her] leg, [her] thigh.' "

The second incident occurred when defendant called E.O. to his room.  E.O. and defendant were in defendant's bed under the covers when she felt his hands on her lower stomach and then moving down to her vagina, under her clothes, continuing to feel around until her younger brother came down the hallway.

The third incident occurred when E.O. was about 10 or 11 years old.  While E.O. was sleeping, she awoke to find defendant between her legs, and he pulled her underwear and shorts down to the mid-thigh.  She shook her head no and tried to get him off her, but

---

[1] Undesignated statutory references are to the Penal Code.

2

he continued trying to take her clothes off until she was able to finally pull them back on and he left.

The fourth incident also occurred when defendant called E.O. into his room. Defendant got into bed with E.O., under his bedcovers. He told her to take off her clothes. Once she removed her clothes, defendant pulled her closer and put his hands on her vagina, "rubbing on the area," and he guided her hand to his penis. She pulled her hand back because she did not want to touch it, but defendant kept pulling her hand towards his penis and made her "touch" and "feel" it. The episode ended when defendant and E.O. heard a car pull into the driveway.

The fifth incident occurred when E.O. was about 12 or 13 years old. Defendant told her to come up to him and held out his phone, saying, " 'Here[,] you can have it,' " but when she reached, he pulled it away. He pointed to his penis and said again, " 'Here, you can have it,' " and then took out his penis. When she refused, he told her, " 'No, you can have it, but come here.' " When she still refused, defendant told her she would not get the phone, and she understood she would not get to play on the phone unless she "did something involving" his penis.

The last incident recounted by E.O. occurred when E.O. was about 12 years old. E.O. was in bed when defendant tried to insert his penis into her vagina. She told him to stop because it hurt, and defendant tried to re-insert his penis but E.O. pushed herself away.

After E.O. told her mother defendant had been touching her, E.O.'s mother contacted law enforcement. A detective interviewed E.O., and she described incidents when defendant exposed himself and tried to insert his penis into her vagina.

Defendant testified and claimed that during the first episode where he was watching television with E.O., she had grabbed his arm and put it on her thigh, and nothing sexual happened. He denied all of the other incidents and claimed he was never

3

alone with E.O., he never touched her vagina or touched her in any way sexually, and he never tried to get her to touch his penis.

During the jury instruction conference, the trial court asked the parties if they had any objections or desired changes to the court's proposed instructions. Defendant stated that he only had an issue with CALCRIM No. 250, the general intent instruction. The court explained section "288.5 is a general intent, oddly enough." Defendant explained, "Yeah. Usually it does seem like it would be a specific intent, but if it is a general intent, then that would be the appropriate instruction. So other than that, no." The People had no objection to the instruction, and the court explained that it appeared that CALCRIM No. 250 applied the correct intent. The court also explained there were no alterations from CALCRIM No. 1120, the instruction regarding continuous sexual abuse, but offered, "if you have a case that says that the instruction should be different, please bring that to my attention."

The court later gave the jury CALCRIM No. 250, modified as follows:

"The crime or other allegation charged in this case requires proof of the union, or joint operation, of act and wrongful intent.

"For you to find a person guilty of the crime or lesser-included offenses, that person must not only commit the prohibited act[,] but must do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act. However, it is not required that he or she intend[s] to break the law. The act required is explained in the instruction for each crime or lesser-included offense."

The court also gave the jury CALCRIM No. 1120, regarding a violation of section 288.5, subdivision (a), instructing that the People must prove, among other things, that: (1) the defendant engaged in three or more acts of substantial sexual conduct or lewd or lascivious conduct with a minor child; (2) three or more months passed between the first and last acts; and (3) the child was under the age of 14 years at the time of the acts. The court further instructed the jury that:

4

" 'Substantial sexual conduct' means oral copulation or masturbation of either the child or the perpetrator[,] or penetration of the child's vagina or rectum by the other person's penis.

" 'Lewd or lascivious conduct' is any willful touching of a child accomplished with the intent to sexually arouse the perpetrator or the child. Contact with the child's bare skin or private parts is not required. Any part of the child's body or the clothes the child is wearing may be touched. [¶] Lewd or lascivious conduct also includes causing a child to touch his or her own body or someone else's body at the instigation of a perpetrator who has the required intent.

"Someone . . . commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend[s] to break the law, hurt someone else[,] or gain any advantage.

"You cannot convict the [d]efendant unless all of you agree that he committed three or more acts over a period of at least three months[,] [b]ut you do not all need to agree on which three acts were committed."

During closing arguments, the People restated section 288.5, subdivision (a)'s requirement that the defendant commit at least three acts of substantial sexual conduct or lewd and lascivious conduct and stated that "lewd and lascivious conduct" meant that the defendant "touched [E.O.] on purpose with the intent of either arousing or gratifying his sexual desires or her sexual desires." The People argued that the couch incident was an incident of lewd and lascivious conduct, and all the other incidents constituted both substantial sexual conduct and lewd and lascivious conduct because they involved touching for a sexual purpose.

During closing arguments, defense counsel argued that the case was "about credibility when it comes down to it." Counsel referred to the couch episode and argued that defendant merely had his hand on E.O.'s side. Counsel asserted this was neither substantial sexual conduct nor lewd and lascivious conduct because, as explained in

5

CALCRIM No. 250, "there has to be act and intent. The fact itself is not enough. It has to be with the intent to sexually arouse" defendant or E.O. The People objected, stating defense counsel was "equating it to a specific intent crime when it's a general intent crime." The court responded: "Lewd or lascivious conduct also includes causing a child to touch his or her own body or somebody else's body at the instigation of a perpetrator who has the required intent. [¶] I'll refer you to continuous sexual abuse, [CALCRIM No.] 1120." Defense counsel continued to argue that E.O.'s testimony was not credible, and the People had not proven that at least qualifying incidents took place because, among other things, "there's not enough details. There's not enough information. It's very vague. There are issues with whether it makes sense."

After the parties' closing arguments, the trial court re-read the jury instruction for a violation of section 288.5, including the instruction that lewd and lascivious conduct requires the intent to sexually arouse the perpetrator or the child. The jury found defendant guilty on the sole count and found true the allegation of substantial sexual conduct under section 1203.066, subdivision (a)(8).

The trial court imposed the upper term of 16 years, noting, among other things, that it saw defendant testify and it had "no doubt" as to the victim's credibility. Defendant timely appealed.

## II. DISCUSSION

Defendant contends that the trial court's instructions erroneously and prejudicially permitted the jury to convict him without finding specific intent. The People contend that defendant forfeited this argument, there was no instructional error, and any error was harmless.

We disagree that defendant's claim of instructional error was forfeited. (See *People v. Vega* (2015) 236 Cal.App.4th 484, 495 ["Generally, failure to object does not waive an instructional error on appeal if the instruction was an incorrect statement of law

6

or the defendant's substantial rights were affected"].) Nonetheless, we need not reach the claim of error because we conclude defendant's claim fails for lack of prejudice.

We review claims of instructional error de novo. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.) "When considering a claim of instructional error, we review the challenged instruction in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner." (*People v. Houston* (2012) 54 Cal.4th 1186, 1229.) "Where two inconsistent instructions are given and one is correct and the other is wrong, an appellate court cannot speculate which one the jury followed." (*People v. Dollar* (1991) 228 Cal.App.3d 1335, 1342.)

Reviewing the instructions and the record as a whole, the trial court's general intent instruction based on CALCRIM No. 250 was incorrect, but this error was harmless. Section 288.5, subdivision (a) may be violated by three or more acts of either "substantial sexual conduct" or "lewd or lascivious conduct." The former requires general intent and the latter requires the specific intent of "arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." (§ 288, subd. (a); see *People v. Whitham* (1995) 38 Cal.App.4th 1282, 1293.) The charge here was based on both substantial sexual conduct and lewd or lascivious acts. While the People contend that there was evidence of more than three acts of substantial sexual conduct, it is unclear whether the jury based its decision on substantial sexual conduct or the lewd or lascivious element of the crime. If based on the lewd or lascivious requirement, the instructions given by the trial court were contradictory as to the required intent.[2]

---

[2] The jury found that defendant committed at least one act of substantial sexual conduct. However, it is not clear whether the jury found defendant committed two additional acts of substantial sexual conduct, or some combination of substantial sexual conduct and lewd or lascivious conduct. (See, e.g., *People v. Whitham, supra*, 38 Cal.App.4th at p. 1297 [§ 288.5 does not require juror unanimity as to which three acts were committed

7

Giving conflicting intent instructions for a specific intent crime is instructional error. (*People v. Dollar, supra*, 228 Cal.App.3d at p. 1342; *People v. Hood* (1969) 1 Cal.3d 444, 452.) Thus, although the CALCRIM No. 1120 instruction correctly required defendant to have had the specific intent to "sexually arouse the perpetrator or the child," this instruction did not remedy the error.

This error, however, did not prejudice defendant. "If conflicting instructions on the mental state element of an alleged offense can act to remove that element from the jury's consideration, the instructions constitute a denial of federal due process and invoke the *Chapman* 'beyond a reasonable doubt' standard for assessing prejudice." (*People v. Maurer* (1995) 32 Cal.App.4th 1121, 1128; *Chapman v. California* (1967) 386 U.S. 18, 24.) "[S]uch an error is deemed harmless when a reviewing court, after conducting a thorough review of the record, 'concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence.' " (*People v. Aranda* (2012) 55 Cal.4th 342, 367.)

Here, there is no reasonable possibility the jury could have found defendant lacked the requisite intent. The primary defense presented at trial was that E.O. should not be believed. Based on its verdict, the jury clearly believed E.O. and disbelieved defendant. E.O. testified that defendant touched her vagina multiple times, tried to pull her underwear off while on top of her, made her touch his penis, tried to insert his penis into her vagina twice, and exposed his penis to her. Defendant provided no explanation for any of these acts, instead denying they occurred at all. Moreover, there is no conceivable explanation for these incidents other than defendant's sexual gratification, assuming they occurred.

---

as "it is the number of acts of molestation which is the essential element of the crime, and not jury unanimity about which particular acts constitute the crime"].)

8

Aside from the couch episode, where defendant claimed there was no sexual intent, there is no evidence from which the jury could have found defendant had any intent for any of the incidents other than for his own sexual arousal. (See *People v. Ngo* (2014) 225 Cal.App.4th 126, 163.) The correct specific intent instruction in CALCRIM No. 1120, repeated by the court before and after closing arguments, and the prosecutor's correct statement in closing that lewd and lascivious conduct requires that defendant "touched [E.O.] on purpose with the intent of either arousing or gratifying his sexual desires or her sexual desires," make it all the more certain that the jury found defendant committed continuous sexual abuse with the necessary intent. Accordingly, the conflicting intent instructions did not prejudice defendant.

## III. DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, J.

We concur:

/S/

_____

DUARTE, Acting P. J.

/S/

_____

MESIWALA, J.